OPINIONS OF THE SUPREME COURT OF OHIO

**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. Bailey, Appellee.
[Cite as State v. Bailey (1994),     Ohio St.3d    .]
Criminal law -- Making unsworn false oral statements to law
      enforcement officer -- Punishable under R.C.
      2921.32(A)(5), when.
The making of unsworn false oral statements to a law enforcement
         officer with the purpose to hinder the officer's
         investigation of a crime is punishable conduct within
         the meaning of R.C. 2921.32(A)(5).  (Columbus v.
         Fisher [1978], 53 Ohio St.2d 25, 7 O.O.3d 78, 372
         N.E.2d 583, and Dayton v. Rogers [1979], 60 Ohio St.2d
         162, 14 O.O.3d 403, 398 N.E.2d 781, limited.)
      (No. 93-2165 -- Submitted September 21, 1994 -- Decided
December 30, 1994.)
      Certified by the Court of Appeals for Montgomery County,
No. 13672.
      On June 23, 1992, two Dayton Municipal Court marshals and
four Dayton police officers went to Marvin Woodfork's residence
to arrest him on an outstanding traffic capias.  Prior to their
arrival, the marshals attempted to confirm that Woodfork was at
home by telephoning the residence.  When an unidentified woman
answered the phone, the marshals asked for Woodfork.  The woman
responded, "Just a minute, I'll get him."  Immediately, the
marshals hung up the telephone and, after verifying the capias,
went to the residence to meet the four police officers.
      Upon arrival, the marshals encountered appellee, Rhonda
Bailey, Woodfork's sister, standing at the front door.  The
marshals asked Bailey to move away from the door so the
officers could enter the residence to arrest Woodfork.  Bailey
refused to move, declaring that "Marvin's not here.  He left
after the phone call."  Bailey continued to refuse requests by
the marshals to move from the doorway, reasserting each time
that Woodfork had left.
      Upon Bailey's request to see a search warrant, the
marshals told her they did not need a search warrant because

they had two arrest warrants for Woodfork and that they knew he was inside the residence. Bailey then moved enough so that the law enforcement officers were able to enter the residence. The officers searched the house, found Woodfork hiding in the basement, and arrested him on the outstanding warrants.

Bailey was charged with obstructing justice, in violation of R.C. 2921.32(A)(5). The trial court found her guilty and sentenced her to sixty days in jail, suspended thirty days of the sentence, and placed her on unsupervised probation for one year.

The court of appeals reversed, holding that "[i]n view of the previous pronouncements of the Supreme Court on this issue, and finding no material basis to distinguish the prohibited conduct at issue under the Obstructing Justice statute in this case from the prohibited conduct at issue under the Falsification and Obstructing Official Business statutes in Fisher and Rogers respectively, we must conclude that R.C. 2921.32(A)(5) does not forbid making unsworn oral misrepresentations to law enforcement officials."

Finding its judgment to be in conflict with that of the Ninth District Court of Appeals in State v. Bolyard (1990), 68 Ohio App.3d 1, 587 N.E.2d 380, the court of appeals certified the record of the case to this court for review and final determination.

J. Anthony Sawyer, Director of Law, and John J. Scaccia, Chief Prosecutor, for appellant.

Kurt R. Portmann, Montgomery County Public Defender, and Brian D. Weaver, Assistant Public Defender, for appellee.

Moyer, C.J. The issue presented is whether the making of unsworn false oral statements to a law enforcement officer with the purpose to hinder the officer's investigation of a crime constitutes conduct punishable within the meaning of R.C. 2921.32(A)(5). We conclude that such statements are punishable under the statute and reverse the judgment of the court of appeals.

In reversing Bailey's conviction, the court of appeals relied on our holdings in two cases: Columbus v. Fisher (1978), 53 Ohio St.2d 25, 7 O.O.3d 78, 372 N.E.2d 583, and Dayton v. Rogers (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781. Both cases applied statutes different from, but similar to, R.C. 2921.32(A)(5).

In Columbus v. Fisher, supra, we addressed the issue of unsworn false oral statements for the first time. The defendant in Fisher gave a false name to a police officer and was convicted of violating a municipal ordinance identical to R.C. 2921.13(A)(3) that prohibited false statements made with the purpose of misleading a public official in performing official functions.1

The court traced the history of R.C. 2921.13(A) to Section 241.3 of the Model Penal Code. Originally presented to the American Law Institute in 1957 as Section 208.22 of Tentative Draft No. 6 of the Model Penal Code, Section 241.3 was adapted from Section 1001, Title 18, U.S.Code, which provides in relevant part:

"Whoever, in any matter within the jurisdiction of any

department or agency of the United States knowingly and willfully *** makes any false, fictitious or fraudulent statements or representations, *** shall be fined not more than $10,000 or imprisoned not more than five years, or both." (Emphasis added.)

The Fisher court, however, preferred the reasoning of Section 241.3, which required that a false statement, to be punishable, must be in writing and must also derive from an intent to mislead.

The Model Penal Code's restrictive view, adopted by the Fisher court, derives from a fear that a statute punishing oral misstatements might be used by law enforcement officers to pressure an individual into a "Hobson's choice": Tell the truth and go to jail, or tell a lie and go to jail.

Believing the Ohio General Assembly shared a similar concern that R.C. 2921.13(A)(3) could be used in a coercive manner during criminal investigations, this court reasoned that R.C. 2921.13(A)(3) was not intended to criminalize unsworn false oral statements made in response to inquiries initiated by law enforcement officials. Therefore, R.C. 2921.13(A)(3), in general, and the term "statement," in particular, were given a limited judicial construction.

In Dayton v. Rogers, supra, the issue of unsworn false oral statements was again presented to this court. This time, however, the defendant lied to a police officer by falsely confirming her companion's identity, and was charged, not with violating R.C. 2921.13(A), but with violating R.C. 2921.31(A), prohibiting the performance of any act that hampers or impedes a public official.[2]

Relying on Fisher, the Rogers court held that because "conduct such as appellant's is not punishable under R.C. 2921.13(A)(3), which specifically addresses the making of false statements to public officials, we are reasonably led to the determination here not to extend the meaning of R.C. 2921.31 beyond that intended by the General Assembly." Rogers, supra, at 164, 14 O.O.3d at 404-405, 398 N.E.2d at 783. Further, the court reasoned that the defendant was under no legal duty to respond to the police officers' questions, and that her lie was no more obstructive to the police investigation than her silence would have been.

It is significant that when Fisher and Rogers were decided, the federal courts were unsettled as to the potential reach of the federal law. Moreover, there was a lack of persuasive authority from other states interpreting similar statutes from which this court could draw analogy. Over the last fifteen years, however, the law in this area has crystallized. Federal case law has firmly established that unsworn false oral statements made for the purpose of impeding an officer's investigation are punishable under the federal statute. United States v. Rodgers (1984), 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492, and United States v. Steele (C.A.6, 1990), 896 F.2d 998.

In United States v. Rodgers, supra, the Supreme Court of the United States reaffirmed the existence of "a 'valid legislative interest in protecting the integrity of [such] official inquiries'" as "an interest clearly embraced in, and furthered by, the broad language of { 1001." 466 U.S. at

481-482, 104 S.Ct. at 1947, 80 L.Ed.2d at 499 (quoting Bryson v. United States [1969], 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264, 270).  The Rodgers court addressed several of the policy arguments urged in support of a narrow construction of Section 1001.  The court concluded that the apparent inconsistency in the severity of the penalty for making an unsworn false statement to a government official as compared to the lesser penalty for perjury did not express an intention of Congress to limit the violations covered by Section 1001.

Second, the court rejected the argument that criminalizing false oral statements would have a deleterious effect on communications between citizens and law enforcement agencies. Noting that the law criminalizes the knowing and willful lying to law enforcement officers, the United States Supreme Court wisely refuted the perception that "the spectre of criminal prosecution" would thwart "'the important social policy that is served by an open line of communication between the general public and law enforcement agencies.'"  Rodgers at 483, 104 S.Ct. at 1948, 80 L.Ed.2d at 500 (quoting Friedman v. United States [C.A.8, 1967], 374 F.2d 363, 369).  The court confidently determined that "'individuals acting innocently and in good faith, will not be deterred from voluntarily giving information or making complaints'" to government agencies.  Id. (quoting United States v. Adler [C.A.2, 1967], 380 F.2d 917, 922, certiorari denied [1967], 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602).

Rodgers and its progeny make clear the strong governmental interest in facilitating law enforcement by discouraging individuals from knowingly giving false information to confound the justice system.  The act of lying in the course of a police investigation can result in even greater harms than hindering officers in identifying suspects or solving crimes.  False information that is grounded in accurate fact, as in Fisher, could lead to the arrest and possible conviction of an innocent person.  The interests of the state in criminalizing these unsworn false oral statements outweigh an individual's interest in protecting a lie.  Although the possibility of police wrongdoing does exist, it does not override the state's interest in promoting the honesty of its citizens and preventing the waste of limited police resources diverted by false information.

Furthermore, ample deterrents to police coercion are afforded by other means.  Perhaps most significant is the constitutional protection of the privilege against self-incrimination.  The Fifth and Fourteenth Amendments protect a person's right to remain silent in response to incriminating inquiries.  This right effectively eliminates the alleged "Hobson's choice" that a suspect could face during a criminal investigation.  The privilege, however, cannot be extended to include false oral statements made to mislead law enforcement officers.  "Our legal system provides methods for challenging the Government's right to ask questions -- lying is not one of them.  A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood."  Bryson, supra, at 72, 90 S.Ct. at 360, 24 L.Ed.2d at 271.

In addition, federal case law has created the protection

of an "exculpatory no" exception.  See United States v. Rodriguez-Rios (C.A.5, 1994), 14 F.3d 1040, 1043, fn. 4, 5, and 6.  But, see, United States v. Steele (C.A.6, 1991), 933 F.2d 1313, 1320, certiorari denied (1991),    U.S.    , 112 S.Ct. 303, 116 L.Ed.2d 246.  Under this exception, general negative and exculpatory responses made by a subject of a criminal investigation in reply to questions directed to him by investigators is not a crime under federal law.3

With the benefit of the Supreme Court's analysis of the federal statute from which the statutes in Fisher and Rogers were derived, and mindful of the available protections, we review the conviction of the defendant herein for a violation of R.C. 2921.32(A)(5), which provides:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"***

"(5) Communicate false information to any person."

There can be no question that the words uttered by defendant to the officers as she blocked the entrance to her home constituted the communication of false information.  A trier of fact could reasonably conclude from the evidence that defendant's purpose in making the false communication to the law enforcement officers was to hinder the discovery or apprehension of Marvin Woodfork.

The state has a legitimate interest in aiding the law enforcement process by discouraging individuals from purposely giving false information that impedes the operation of the justice system.  Full and honest cooperation with public officials, especially the police, by citizens is vital to the effective operation of this system.  Columbus v. New (1982), 1 Ohio St.3d 221, 1 OBR 244, 438 N.E.2d 1155.  We hold, therefore, that the making of an unsworn false oral statement to a law enforcement officer with the purpose to hinder the officer's investigation of a crime is punishable conduct within the meaning of R.C. 2921.32(A)(5).  Our holdings in Columbus v. Fisher and Dayton v. Rogers are hereby limited to the facts in those cases.

For the foregoing reasons, the judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

Judgment reversed.

Douglas, F.E. Sweeney and Pfeifer, JJ., concur.
A.W. Sweeney and Wright, JJ., concur separately.
Resnick, J., concurs in the syllabus and judgment only.


FOOTNOTES:

1 R.C. 2921.13 provides in pertinent part:

"(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

"***

"(3) The statement is made with purpose to mislead a public official in performing his official function."

2 R.C. 2921.31(A) provides in pertinent part:

"No person, without privilege to do so and with

purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

3 Because the "exculpatory no" doctrine does not extend to the facts in the instant case, we do not rule on the applicability or viability of the "exculpatory no" doctrine to the statute reviewed today.  See Columbus v. New (1982), 1 Ohio St.3d 221, 1 OBR 244, 438 N.E.2d 1155.

Wright, J., concurring.    I certainly agree with the result achieved by the court of appeals, as it tracks the reasoning announced in Columbus v. Fisher (1978), 53 Ohio St.2d 25, 7 O.O.3d 78, 372 N.E.2d 583, and Dayton v. Rogers (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781.  Further, I believe the General Assembly never "intended to make the utterance of unsworn oral misstatements, in response to inquiries initiated by law enforcement officials, punishable conduct."  Fisher, supra, at 29, 7 O.O.3d at 80, 372 N.E.2d at 585.  However, pursuant to well-established principles of statutory construction, I am not permitted to rely upon the "legislative intent" of R.C. 2921.32(A)(5) to reach an interpretation inconsistent with that statute's clear and unambiguous language.  Slingluff v. Weaver (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus.  "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact."  Id.  See, also, Holiday Inns, Inc. v. Limbach (1990), 48 Ohio St.3d 34, 36, 548 N.E.2d 929, 932 (stating that "[t]he question regarding what the General Assembly intended to enact will not be entertained when the meaning of what was enacted is clear and plainly expressed").

On its face, R.C. 2921.32(A)(5) clearly proscribes any person from communicating false information to any person with the purpose of hindering the discovery or apprehension of another for crime.  Accordingly, I reluctantly concur in the majority opinion.

A.W. Sweeney, J., concurs in the foregoing concurring opinion.