**In re SLUSSER, Appellant.**

[Cite as *In re Slusser* (2000), 140 Ohio App.3d 480.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–2000–08.

Decided Nov. 15, 2000.

*Andrew J. Hinders,* Mercer County Prosecuting Attorney, for appellee.

*John A. Poppe,* for appellant.

---

HADLEY, Presiding Judge.

The defendant-appellant, Michael L. Slusser ("appellant"), appeals the judgment of the Mercer County Court of Common Pleas, Juvenile Division, adjudicating him to be delinquent for having violated R.C. 2921.13(A)(3), Ohio's falsification statute. For the following reasons, we affirm the judgment of the trial court.

The facts and procedural history of the case are as follows. In January 1999, the appellant, a juvenile, admitted to one count of sexual battery. The appellant was sentenced to a term of probation. As a condition of his probation, the appellant was ordered to serve a period of time under house arrest. As a condition of his house arrest, the appellant was ordered to proceed directly to and from school.[1]

On the evening of January 7, 2000, Melissa McLeland, age seventeen, reported to the Celina Police Department that she had been the victim of a rape. McLeland informed the authorities that earlier that morning the appellant, on his way to school, picked her up at her home and raped her.

Later that evening, Angie Gehle, the appellant's probation officer, and David Slusser, Chief of Police of the Celina Police Department, visited the appellant's

---

1. At the time of his arrest, the appellant was a student at Celina High School.

home.[2] The appellant informed Officer Gehle that he had driven straight to school and did not engage in sexual intercourse. During another interview with Officer Gehle on January 11, 2000, the appellant insisted that he had driven straight to school on the morning of January 7, 2000.

On January 21, 2000, the appellant admitted to Officer Gehle that he had lied to her regarding the events of January 7, 2000. The appellant informed Officer Gehle that he had picked up McLeland at her home and, shortly thereafter, the two had engaged in sexual intercourse.

On February 4, 2000, a complaint was filed against the appellant alleging him to be a delinquent child. The appellant was charged with one delinquency count of falsification, in violation of R.C. 2921.13(A)(3), a misdemeanor of the first degree.[3] On May 4, 2000, a bench trial was held. On that date, the appellant's counsel filed a motion to dismiss.[4] In his motion, the appellant asserted that the falsification charge should be dismissed based upon the federal "exculpatory no" exception, which had held that a general negative and exculpatory response made by a subject of a criminal investigation in reply to questions directed to him by an investigator was not a crime under federal law.

By judgment entry filed on May 11, 2000, the appellant's motion was overruled and he was found delinquent on one count of falsification. The appellant was sentenced to a term of imprisonment of sixty days.[5]

McLeland eventually retracted the rape allegation and admitted to one count of falsification. McLeland was sentenced to a term of imprisonment of thirty days.

The appellant now appeals, asserting three assignments of error for our review. Because the appellant's first and second assignments of error are interrelated, we will address them simultaneously.

### Assignment of Error No. I

"The court erred when it failed to dismiss the charge of falsification contrary to Ohio Revised Code 2921.13 when the facts showed that the juvenile gave a

---

2. Chief Slusser and the appellant are not related.

3. The appellant was not charged with a probation violation.

4. We note that Crim.R. 12(C) states that "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial * * *." It is undisputed in this case that the appellant did not file his motion to dismiss until approximately one hour before the commencement of his trial. The state, however, did not raise the issue in its brief. On this basis, and in the interests of justice, we will address the appellant's assignments of error as they relate to his motion to dismiss.

5. The appellant's sentence was stayed pending the outcome of this appeal.

general negative and exculpatory response to an accusatory question by an investigator."

Assignment of Error No. II

"The court erred as a matter of law when it determined that the relationship of a defendant/probation officer is significantly different from that of an accused to an investigating officer and therefore the exculpatory no is a violation of the falsification statute."

In his first and second assignments of error, the appellant essentially maintains that the trial court erred in overruling his motion to dismiss. In essence, the appellant asserts that the trial court erred in failing to apply the "exculpatory no" exception to the facts of the case herein. For the following reasons, we do not agree.

In the case before us, the appellant was found delinquent on one count of violating R.C. 2921.13(A)(3), Ohio's falsification statute, which provides:

"(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

"* * *

"(3) The statement is made with purpose to mislead a public official in performing the public official's official function."

In *Columbus v. Fisher* (1978), 53 Ohio St.2d 25, 7 O.O.3d 78, 372 N.E.2d 583, the Supreme Court of Ohio addressed the issue of unsworn false oral statements for the first time. In *Fisher*, the defendant gave a false name to a police officer and was convicted of violating a municipal ordinance virtually identical to R.C. 2921.13(A)(3). The court in *Fisher* traced the history of R.C. 2921.13(A)(3) to Section 241.3 of the Model Penal Code, which was adapted from Section 1001, Title 18, U.S.Code. Section 1001 imposes criminal liability for knowingly and willfully making a false statement to a federal investigator.

According to the court in *Fisher*, R.C. 2921.13(A)(3) was not intended to criminalize an unsworn false oral statement made in response to an inquiry initiated by a law enforcement official. The court held that in order for a false statement to be punishable, it must be in writing and also must derive from an intent to mislead. R.C. 2921.13(A)(3) was, therefore, given a limited judicial construction and interpretation by the court.

In *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781, the Supreme Court of Ohio reached a similar conclusion when a defendant was charged under R.C. 2921.31(A), Ohio's obstructing official business statute. In *Rogers*, the defendant was convicted of violating R.C. 2921.31(A) after she had

lied to a police officer by falsely confirming the identity of her companion. Relying upon its decision in *Fisher,* the court concluded that the defendant's conduct was not punishable under R.C. 2921.31(A).

In *State v. Bailey* (1994), 71 Ohio St.3d 443, 644 N.E.2d 314, the Supreme Court of Ohio reexamined the position it had taken in *Fisher* and *Rogers.* In *Bailey,* the defendant was convicted under R.C. 2921.32(A)(5), Ohio's obstructing justice statute, after she had lied to police officers regarding the whereabouts of her brother. The court upheld the defendant's conviction on the basis that federal case law had firmly established that an unsworn false oral statement made· for the purpose of impeding an officer's investigation was punishable conduct. Thus, the court extended the reach of R.C. 2921.32(A)(5) to include a false oral statement. *Id.*

The *Bailey* court also discussed the "exculpatory no" exception. The court stated as follows:

"[F]ederal case law has created the protection of an 'exculpatory no' exception. See *United States v. Rodriguez–Rios* (C.A.5, 1994), 14 F.3d 1040, 1043, fn. 4, 5, and 6. But, see, *United States v. Steele* (C.A.6, 1991), 933 F.2d 1313, 1320, certiorari denied (1991), 502 U.S. 909, 112 S.Ct. 303, 116 L.Ed.2d 246. Under this exception, general negative and exculpatory responses made by a subject of a criminal investigation in reply to questions directed to him by investigators is not a crime under federal law." *Id.* at 447–448, 644 N.E.2d at 317.

The court, however, declined to address the "exculpatory no" doctrine on the basis that the doctrine did not extend to the facts of the case.

In *State v. Lazzaro* (1996), 76 Ohio St.3d 261, 667 N.E.2d 384, the Supreme Court of Ohio broadened the reach of R.C. 2921.13(A)(3), Ohio's falsification statute, and R.C. 2921.31(A), Ohio's obstructing official business statute, to include false oral statements. In *Lazzaro,* the defendant provided false information to an investigating police officer regarding an alleged assault.

The *Lazzaro* court concluded that the making of an unsworn false oral statement to a public official with the purpose to mislead, hamper, or impede the investigation of a crime was punishable conduct within the meaning of both R.C. 2921.13(A)(3) and 2921.31(A). Although the defendant had raised the "exculpatory no" exception as a defense, the court declined to address the issue because the investigating officer's questioning did not implicate the defendant's Fifth Amendment protections against self-incrimination.

■ Having affirmatively established that an unsworn false oral statement made for the purpose of impeding an officer's investigation constitutes punishable conduct under Ohio's falsification statute, we need only ascertain whether the

statements made by the appellant to Officer Gehle are subject to the "exculpatory no" doctrine.

The decisions in *Bailey* and *Lazzaro* have led at least one Ohio court to presume that given the appropriate set of facts the Supreme Court of Ohio will embrace the "exculpatory no" exception. The appellant urges this court to follow the reasoning and holding of the Fifth District Court of Appeals in *State v. Marshall* (Feb. 25, 1998), Fairfield App. No. 97CA52, unreported, 1998 WL 401849. In *Marshall,* the defendant had been accused of raping a woman. Prior to his arrest, the defendant gave a taped statement to the police denying that he had any sexual contact with the victim. At trial, the defendant testified on his own behalf. During his testimony, the defendant admitted that he had lied to the police, but that he had engaged in consensual sexual intercourse with the alleged victim. The jury ultimately returned a not-guilty verdict.

The defendant was nonetheless charged with falsification, in violation of R.C. 2921.13, and was ultimately convicted of that charge. On appeal, the defendant asserted that his conviction should be reversed based upon the federal "exculpatory no" exception. The Fifth District Court of Appeals determined that, based upon the language set forth in *Bailey,* the Supreme Court of Ohio had emphatically embraced the doctrine and the defendant could therefore avail himself of that defense. The trial court dismissed the charge against the appellant upon that basis.

We find, however, on the authority of *Brogan v. United States* (1998), 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830, that the appellant could not avail himself of the "exculpatory no" exception. In *Brogan,* the Supreme Court of the United States addressed the applicability of the alleged federal "exculpatory no" exception to Section 1001, Title 18, U.S.Code. The defendant in *Brogan* was indicted for accepting unlawful cash payments from an employer in violation of federal law, and making false statements to federal investigators when he falsely answered "no" to the question whether he had ever received cash or gifts from certain entities when he was a union officer. *Id.* at 399–400, 118 S.Ct. at 807–808, 139 L.Ed.2d at 834–835.

The court invalidated the long-standing "exculpatory no" doctrine, which had been interpreted by numerous federal courts to exclude liability for a suspect's mere denial of wrongdoing, on the basis that the plain language of Section 1001 admits of no exceptions for such statements made in response to an investigator's questioning. The court stated emphatically and unequivocally that "[c]ourts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so * * *." *Id.* at 408, 118 S.Ct. at 811–812, 139 L.Ed.2d at 840.

The *Brogan* court also found unpersuasive the defendant's assertions that the statute would become an instrument of prosecutorial abuse, stating that "[t]he * * * principal grievance * * * lies not with the hypothetical prosecutors but with [the legislature], which has decreed the obstruction of a legitimate investigation to be a separate offense, and a serious one." *Id.* at 405, 118 S.Ct. at 810, 139 L.Ed.2d at 838. The court also emphasized that "[n]either the text nor the spirit of the Fifth Amendment confers a privilege to lie." *Id.* at 404, 118 S.Ct. at 810, 139 L.Ed.2d at 838. " '[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.' " *Id.* at 404–405, 118 S.Ct. at 810, 139 L.Ed.2d at 838, quoting *United States v. Apfelbaum* (1980), 445 U.S. 115, 117, 100 S.Ct. 948, 950, 63 L.Ed.2d 250, 254.

■■■■ The language of Ohio's falsification statute, like that of the federal statute, is clear and unequivocal. As we previously stated, the history of R.C. 2921.13(A)(3) can be traced back to Section 241.3 of the Model Penal Code, which was adapted from Section 1001, Title 18, U.S.Code. On its face, the statute admits of no exception for exculpatory statements made in response to an investigator's questioning. The law in Ohio is clear that "if the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. Unambiguous statutes are to be applied according to the plain meaning of the words used. *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St.3d 125, 127, 661 N.E.2d 1011, 1012–1013, and courts are not free to delete or insert other words. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150, 153.

■■■■ For all of the foregoing reasons, we find that the appellant could not avail himself of the "exculpatory no" exception. Thus, we uphold the appellant's conviction for knowingly making a false statement with the purpose to mislead his probation officer, a public official within the meaning of R.C. 102.01, in performing her official function.[6]

Accordingly, the appellant's first and second assignments of error are overruled.

### Assignment of Error No. III

"The court erred in sentencing the appellant to 60 days in jail for the offense of falsification."

---

6. R.C. 102.01 defines a "public official" as "any person who is elected or is appointed to an office or is an employee of any public agency." We find that a probation officer constitutes a "public official" within the meaning of R.C. 102.01.

In his third and final assignment of error, the appellant maintains that the trial court erred in sentencing him to a term of imprisonment of sixty days. For the following reasons, we do not agree.

■■ Initially, we note that the standard for determining whether a trial court erred in imposing a sentence for a misdemeanor offense is that of an abuse of discretion. *State v. Benvenuto* (Mar. 28, 2000), Auglaize App. Nos. 2–99–35 and 2–99–36, unreported, 2000 WL 327228; *State v. Faye* (May 4, 2000), Wyandot App. Nos. 16–99–08 and 16–99–09, unreported, 2000 WL 566741; *State v. Garfield* (1986), 34 Ohio App.3d 300, 518 N.E.2d 568. A finding of abuse of discretion requires evidence that the decision of the trial judge was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.

The crime of falsification is a misdemeanor of the first degree. See R.C. 2921.13(E)(1). The maximum term of imprisonment for a first degree misdemeanor is six months in jail and a $1,000 fine. See R.C. 2929.21(B)(1) and (C)(1). In the case herein, the appellant was sentenced to a term of incarceration of only sixty days. Thus, the sentence was clearly within the parameters of R.C. 2929.21(B)(1). Furthermore, the trial court properly considered the factors set forth in R.C. 2929.22 prior to imposing the sentence upon the appellant.[7] For all of the foregoing reasons, we find the appellant's argument not well taken.

Accordingly, the appellant's third and final assignment of error is overruled.

*Judgment affirmed.*

SHAW, J., concurs.

WALTERS, J., concurs in judgment only.

---

7. R.C. 2929.22 provides the trial courts of Ohio with the criteria they must consider in sentencing misdemeanor offenders.