DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant Shannon Westfall appeals the decision of the Summit County Court of Common Pleas convicting her of obstruction of justice. We affirm.
 {¶ 2} On June 2, 2005, an indictment was filed against Defendant, charging her with four drug-related counts, as follows: Illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041, a third degree felony; aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth degree felony; illegal manufacture of drugs in violation of R.C. 2925.04(A), a second degree felony; obstructing justice in violation of R.C. 2921.32(A)(5), a fifth degree felony.
 {¶ 3} A jury trial was conducted on August 18, 2005, and the jury found Defendant not guilty on counts one through three, and guilty on the fourth count. On August 24, 2005, the court imposed a sentence of nine months' incarceration, and suspended imposition of the sentence. The court then placed Defendant on community control for eighteen months, on the condition that she serve ninety days at Oriana Halfway House. Defendant timely filed this appeal, asserting two assignments of error. Because the assignments of error are closely related, we will address them together.
 ASSIGNMENT OF ERROR I
"There was insufficient evidence to support [Defendant's] conviction of obstructing justice and the trial court erred in denying [Defendant's] Criminal Rule 29 Motion for Dismiss [sic] on this charge"
 ASSIGNMENT OF ERROR II
"[Defendant's] conviction of obstruction justice [sic] was contrary to the manifest weight of the evidence."
 {¶ 4} Defendant contends that her conviction is based on insufficient evidence and that it is against the manifest weight of the evidence. As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 5} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts, (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 6} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} Defendant was convicted of obstruction of justice in violation of R.C. 2921.32(A)(5), which provides, in pertinent part: "No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime * * * shall * * * (5) [c]ommunicate false information to any person."
 {¶ 8} Defendant contends that her conviction is against the manifest weight of the evidence because her statement was not manifestly false and there is no evidence that she made it intending to hinder the investigation.
 {¶ 9} On May 23, 2005, the police received an anonymous call informing them that a man named David Gillman, whom the police knew to be involved in the production of methamphetamine, had entered a house in Akron with Defendant. At that time, there was a warrant out for the arrest of Gillman on drug charges. The police set up surveillance outside the house. After twenty-five minutes, one of the officers approached the resident of the house, Nancy Corcelli, to speak with her and to gain consent to enter. Corcelli gave consent, and some of the officers heard a male voice inside the house that they later testified sounded like David Gillman. When the officers first entered, there was a haze covering the ground floor and a strong chemical odor throughout the house. They later found a pie plate in the microwave that was being used to cook methamphetamine. The glass tray beneath the pie plate had become overheated and had cracked; the contents of the pie plate were burned and were causing the haze and odor in the house. After the officers had opened windows all over the house to clear the air, they searched the house for Gillman.
 {¶ 10} As the officers were searching the house, Defendant emerged from the bathroom that was immediately across the hall from the kitchen. One of the officers, Detective Krieger, asked Defendant where Gillman was and she said she didn't know. Defendant said nothing further, nor did the officers ask her any more questions. Detective Krieger told her to sit and wait at the kitchen table, at which time he searched her purse and found a pipe that was used to smoke methamphetamines. A short time later, the officers found Gillman hiding in the closet of one of the bedrooms in the house and apprehended him. Detective Krieger then arrested Defendant, who was later indicted on three drug counts and one count of obstructing justice because of her statement to Detective Krieger.
 {¶ 11} Once Gillman and Westfall were apprehended, the officers searched the house, with the consent of Corcelli. Apart from the pie plate in the microwave, they found a large quantity of items that related to the manufacture of methamphetamine, including a can of lacquer thinner, a jar with a spigot in which several matchbooks were soaking, and multiple packs of pseudoephedrine. Many of these items were found in the bedroom where Gillman was hiding. In addition, the officers found a large fishing tackle box that contained the ingredients for manufacturing methamphetamine as well as a quantity of the finished product. This box was found under a towel in the sink in the bathroom from which Defendant exited before she was questioned by Detective Krieger.
 {¶ 12} At trial, the prosecution elicited extensive evidence from the officers who searched the house on May 23, 2005, about the process of manufacturing methamphetamine and the ingredients required. It then demonstrated that nearly all of those ingredients were present at the house where Defendant was arrested, that they were in various stages of preparation for use in manufacturing methamphetamine, and that they belonged to Gillman. The officers also testified to Defendant's statement to Detective Krieger that she did not know where Gillman was, and to the later discovery of the pipe in her purse.
 {¶ 13} Gillman testified that he had come to Corcelli's house to avoid the authorities because of the outstanding warrant for his arrest. Specifically, he had come to pick up the title to a car that he had bought, which Corcelli had titled for him because of the warrant. Defendant had accompanied him to the house, but it was unclear from the testimony whether she was aware of the warrant. He had brought with him his fishing tackle box full of methamphetamine and raw ingredients for producing methamphetamine. Gillman indicated that he and Defendant had stayed at Corcelli's house in the past, and were familiar with Corcelli and with the house. He said that, on May 23, he had come to Corcelli's house to take a shower, and had been there approximately half an hour before the police arrived. From his testimony, it was apparent that he had only just finished his shower before the police arrived. At one point he testified that he did not know whether Defendant was aware of the contents of the tackle box he brought with him, but he also indicated that it was possible that she was aware of the fact that he was producing methamphetamine. Moreover, he testified that he and Defendant had been dating for eight or nine months, and that it was his child with which Defendant was pregnant at the time of the trial.
 {¶ 14} In its brief, Appellee cites to the Ohio Supreme Court's decision in State v. Bailey (1994), 71 Ohio St.3d 443. In that case, the Court held that "* * * the making of an unsworn false oral statement to a law enforcement officer with the purpose to hinder the officer's investigation of a crime is punishable conduct within the meaning of R.C. 2921.32(A)(5)." Id. at 448. In Bailey, the Court was considering a situation in which the resident of a home clearly and repeatedly stated that the suspect for whom the police were searching was not present in the home. Id. at 444. When the police finally received consent from the resident to search, they found the suspect hiding in her basement. Id. As the Court noted, "There can be no question that the words uttered by defendant to the officers as she blocked the entrance to her home constituted the communication of false information." Bailey at 448. Further, it found that the trier of fact could reasonably conclude based on the evidence presented, that the defendant had made the statements in order to hinder apprehension of the suspect. Id. at 448. Therefore, the Court reinstated the defendant's trial court conviction for obstruction of justice.
 {¶ 15} The Appellee also cites to State v. Lazzaro (1996),76 Ohio St.3d 261, syllabus, to support the proposition that "an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime" amounts to obstruction. This definition of obstruction is virtually identical to that provided by the Court in Bailey.
With the exception of this statement of the standard for obstruction, Lazzaro is distinguishable from this case because the defendant in Lazzaro was charged with obstructing official business under R.C. 2921.31(A), which requires that the police actually be hampered in their investigation by the defendant's false statement. Defendant in this case was charged with obstruction of justice under R.C. 2921.32(A)(5), which simply requires that the false statement be made with the intent to hamper the investigation of the authorities, and not that it result in an actual delay. See State v. Puterbaugh (2001),142 Ohio App.3d 185, 191. Therefore, this case is more aptly governed by the Court's holding in Bailey.
 {¶ 16} While the defendant in Bailey made a demonstrably false statement to the officers, Defendant in this case made an arguably ambiguous statement. As she came from a room that was apparently unconnected to the room in which Gillman was later found, Defendant stated that she did not know where Gillman was. No direct evidence was offered to contradict that claim. However, the circumstantial evidence that had mounted against Defendant permitted the jury to make the reasonable inference that she had at least been aware that Gillman was in the house, and that her assertion was meant to protect Gillman from discovery or to buy him time. The testimony offered during the trial suggested that Gillman, Defendant's boyfriend, was a known manufacturer of methamphetamine, and that the house in which Defendant was found was full of materials used in a methamphetamine lab. Defendant was found exiting the bathroom in which a box full of methamphetamine and its ingredients was sitting in plain view. Gillman and Defendant had arrived at the house together within an hour before the police arrived. Gillman had only just finished in the bathroom from which Defendant was exiting when the police entered the home, suggesting that he could not have gotten far before Defendant denied any knowledge of where he was. Finally, Defendant and Gillman were clearly more than just friends, since she was carrying his baby at the time of the trial.
 {¶ 17} Given this evidence, we are persuaded that the trier of fact did not lose its way in finding Defendant guilty of obstruction of justice. Defendant's conviction is supported by sufficient evidence, both direct and circumstantial, for the jury to conclude that Defendant was aware of Gillman's activities and of the fact that he was being pursued by the authorities. Although Defendant's statement — "I don't know" — might have been ambiguous or even believable in a setting in which she was not surrounded by evidence of a methamphetamine lab and had not just arrived with a methamphetamine cook within an hour of the officer's posing the question, the circumstantial evidence in this situation supports a finding of guilt for the charge of obstruction of justice. The jury was not unreasonable in concluding that, based on all of the evidence, Defendant made the statement that she did primarily to stall the officers who were searching for Gillman, and that her statement was therefore false.
 {¶ 18} As this determination has disposed of Defendant's claims with respect to the weight of the evidence, we similarly dispose of Defendant's claims regarding the sufficiency of the evidence. Roberts, supra, at 4. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, both of Defendant's two assignments of error are overruled.
 {¶ 19} Defendant's two assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J. concurs.