DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} In 2003, while former City of Lorain Safety Service Director Craig Miller campaigned to become the city's auditor, the city's police department began investigating whether a sewer department supervisor improperly leased equipment to the city. Mr. Miller interjected himself into the investigation, informing detectives that he had already contacted the Ohio Ethics Commission about the lease. Mr. Miller provided the detectives with false information resulting in his conviction for obstructing justice. This Court affirms his *Page 2 
conviction because it is supported by sufficient evidence and is not against the manifest weight of the evidence.
 FACTS {¶ 2} In the fall of 2002, the City of Lorain Sewer Department needed to clean some ditches. It therefore leased a bulldozer and grader to do the work. Although the department leased the equipment through a middleman, the equipment was actually owned by a sewer department employee. The sewer department leased the equipment from its employee even though the parks department already owned similar equipment.
 {¶ 3} Because purchases in excess of $15,000 had to be approved by the City Council, the department structured the lease so that $15,000 would be paid in 2002 and $15,000 would be paid in 2003. As Safety Service Director and a member of the Board of Control, Mr. Miller was responsible for approving the lease.
 {¶ 4} After the lease concluded, rumors of its impropriety began circulating. In May 2003, Mr. Miller called the Ethics Commission and spoke with a staff attorney about the lease. The staff attorney explained that, although there is a general prohibition against public employees doing business with their political subdivision, an exception exists if the proposed deal meets four criteria.
 {¶ 5} As Safety Service Director, Mr. Miller was responsible for overseeing the City of Lorain Police Department. When Mr. Miller learned the *Page 3 
police were investigating whether the sewer department employee who owned the equipment had an unlawful interest in a public contract, he contacted a detective and told him that he had already spoken with the Ethics Commission about the lease and that everything sounded fine. Nevertheless, the police continued their investigation.
 {¶ 6} On November 19, 2003, Mr. Miller spoke with a different detective about the lease. Mr. Miller told this detective he had been uncomfortable with the city leasing equipment from one of its employees so he had contacted the Ethics Commission about it. He stated that, after he spoke to the Ethics Commission and learned about the exception, he told the sewer department to go ahead with the lease. When the detective asked Mr. Miller when he had spoken to the Ethics Commission, Mr. Miller answered that it had been a couple of weeks before the lease began. The next day, however, Mr. Miller told the police that he had not actually spoken to the Ethics Commission until after the lease had been fully performed.
 {¶ 7} Mr. Miller's assignments of error are that there was insufficient evidence to convict him and that his conviction is against the manifest weight of the evidence. Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh, this Court will first consider Mr. Miller's argument that his conviction is not supported by sufficient evidence. Whitaker v. M.T. Automotive Inc., 9th Dist. No. 21836, 2007-Ohio-7057, at ¶ 13. *Page 4 
 SUFFICIENCY OF THE EVIDENCE {¶ 8} Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Miller's guilt.
 {¶ 9} Mr. Miller was convicted of violating Section 2921.32 of the Ohio Revised Code:
 (A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, . . . shall do any of the following:
 . . . .
 (5) Communicate false information to any person.
 {¶ 10} "[T]he making of an unsworn false oral statement to a law enforcement officer with the purpose to hinder the officer's investigation of a crime is punishable conduct within the meaning of R.C. 2921.32(A)(5)." State v. Bailey, 71 Ohio St. 3d 443, 448 (1994). Section 2921.32(A)(5) simply requires that the false statement be made with the intent to hamper the investigation of the authorities, and not that it result in an actual delay. See State v. Puterbaugh,142 Ohio App. 3d 185, 191 (2001). *Page 5 
 {¶ 11} Mr. Miller has argued the State failed to present evidence in support of two elements of the crime. First, he has argued there was no evidence that he purposely communicated false information to any person. Second, he has argued there was no evidence that he communicated false information in an attempt to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime.
 {¶ 12} The State presented sufficient evidence that Mr. Miller purposely communicated false information. Purposely is defined in Revised Code Section 2901.22(A):
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
The State presented evidence that the sewer department leased equipment from one of its employees for $30,000 even though another city department owned similar equipment. The State also presented evidence that Mr. Miller was responsible for approving the lease and that Mr. Miller was running for public office at the time the lease was being investigated.
 {¶ 13} The police detective Mr. Miller originally spoke to testified that Mr. Miller told him on September 22, 2003, that Mr. Miller had "contacted the Ethics Commission to make sure that everything was okay, and that he was told that based on what was going on in the City concerning the lease, that it was an okay *Page 6 
lease." The detective testified that from Mr. Miller's comments, he assumed approval had been obtained from the Ethics Commission prior to the City entering in the lease.
 {¶ 14} The State also played the recording of a conversation Mr. Miller had with police on November 19, 2003. During that conversation, Mr. Miller said:
 [B]ut I wasn't comfortable renting it from them until I talked to the Ethics Commission. That's what I told [the detective], was that I called the Ohio Ethics Commission and said that, here's my situation, given this set of facts is there a conflict of interest?
 . . . .
 So, after speaking with the Ethics Commission, I called Charlie and said that the Ethics Commission, based on what they just told me, yeah, go ahead and rent that piece of equipment. . . .
 {¶ 15} Because Mr. Miller admitted on tape that he told a detective on September 22, 2003, that he had contacted the Ethics Commission before he approved the lease, this Court concludes there was sufficient evidence for the jury to find Mr. Miller communicated false information. Because Mr. Miller had been responsible for approving the lease and was running for city auditor at the time he spoke to the detective, this Court also concludes there was sufficient circumstantial evidence from which the jury could reasonably infer Mr. Miller communicated the false information purposely. See State v. Franklin, 62 Ohio St. 3d 118, 124
(1991) (noting a conviction can be sustained based on circumstantial evidence alone). *Page 7 
 {¶ 16} This Court further concludes there was sufficient evidence to support a finding that Mr. Miller intended to hinder the discovery of a crime. As noted, Mr. Miller was running for a financial office at the time the police were investigating the details of the lease. Their investigation into whether the sewer department employee who owned the equipment had an unlawful interest in a public contract, in violation of Revised Code Section 2921.42(A)(4), also revealed that Mr. Miller had mismanaged city funds. Accordingly, there was sufficient evidence to support the inference that Mr. Miller communicated the false information in an attempt to have the police investigation halted or delayed.
 {¶ 17} Mr. Miller has argued that, although he may have been incorrect about the date on which he called the Ethics Commission, his mistake did not constitute false information. "A statement is false when it sets forth matters that are not true." In re Pirko, 44 Ohio App. 3d 3, 5
(1988). Here, Mr. Miller told the police that he had contacted the Ethics Commission before approving the lease. This Court therefore concludes that Mr. Miller communicated false information under Section2921.32(A)(5).
 {¶ 18} Mr. Miller has also argued that, because only an official written opinion from the Ethics Commission could have granted immunity, whether he called the Ethics Commission was irrelevant. This Court notes, however, that Section 2921.32 does not require the false information result in an actual delay. See State v. Puterbaugh,142 Ohio App. 3d 185, 191 (2001). Accordingly, *Page 8 
whether Mr. Miller's false statements actually could have stopped the investigation is immaterial. Mr. Miller's first assignment of error is overruled.
 MAINFEST WEIGHT OF THE EVIDENCE {¶ 19} Mr. Miller's second assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is contrary to the manifest weight of the evidence, the appellate court must review and weigh all the evidence that was before the trial court:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 20} Throughout his conversation with detectives on November 19, 2003, Mr. Miller repeatedly stated that he spoke with the Ethics Commission before the city entered the lease. He also said that he had told a different detective the same thing when they spoke a couple of months earlier. Even though the election was over by the time Mr. Miller spoke with police the second time, he was still subject to potential embarrassment since he had approved the lease of a substantial amount of equipment that was identical to equipment that the city already owned. Accordingly, this Court cannot conclude, after weighing the evidence that was before the trial court, that the jury lost its way and created a manifest miscarriage of justice when it found Mr. Miller purposely communicated false information to *Page 9 
the police in an attempt to hinder the discovery and prosecution of a crime. Mr. Miller's second assignment of error is overruled.
 CONCLUSION {¶ 21} Mr. Miller's conviction was supported by sufficient evidence and was not contrary to the manifest weight of the evidence. His assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 10 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
 SLABY, P. J. WHITMORE, J. CONCUR *Page 1