OPINION
{¶ 1} Defendant-appellant, Juan Robles, appeals from a Youngstown Municipal Court decision sentencing him to jail following his no contest pleas to operating a vehicle without a license and disorderly conduct.
 {¶ 2} On November 22, 2003, Robles was cited for speeding in violation of R.C. 4511.21(C), operating a vehicle without a license in violation of R.C. 4507.02(A), failure to wear a seat belt in violation of R.C.4513.263, and giving false information to a police officer in violation of R.C. 4513.361.
 {¶ 3} Initially, Robles pleaded not guilty and posted bond. On February 4, 2004, the day set for trial, plaintiff-appellee, State of Ohio, moved to dismiss the speeding and seat belt charges and amend the giving false information to a police officer charge, which is a first-degree misdemeanor, to disorderly conduct, which is a fourth-degree misdemeanor. In exchange, Robles pleaded no contest to the remaining charges. The trial court deferred sentencing until April 23, 2004, to give Robles the requested opportunity to present a valid license and proof of insurance in mitigation.
 {¶ 4} The day before the scheduled April 23, 2004 sentencing, Robles moved for a continuance and the trial court reset sentencing for June 23, 2004. Robles failed to appear for sentencing on June 23, 2004, a capias was issued, he was arrested, sentencing was reset for August 18, 2004, and he was released on his own recognizance. Robles again failed to appear for sentencing on August 18, 2004, a capias was issued, he was apparently arrested approximately a year later, sentencing was reset for October 6, 2005, and he was released on a $5000.00 signature bond with the condition that he not leave Mahoning County. Robles again failed to appear for sentencing on October 6, 2005, and the trial court issued yet another capias.
 {¶ 5} Finally, over three years after his no contest pleas to operating a vehicle without a license and disorderly conduct, Robles appeared for sentencing on July 21, 2006. The trial court sentenced Robles to one hundred eighty days in jail for operating a vehicle without a license and thirty days in jail for disorderly conduct. This appeal followed. *Page 2 
 {¶ 6} Robles raises two assignments of error. At the outset, it should be noted that the State has failed to file a brief in this matter. Therefore, we may accept Robles' statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 7} Robles' first assignment of error states:
 {¶ 8} "THE TRIAL COURT COMMITTED ERROR IN FAILING TO AFFORD THE DEFENDANT THE RIGHT OF ALLOCUTION[.]"
 {¶ 9} Robles argues that he was denied his right of allocution because the trial court did not give him the opportunity to address the court before it pronounced sentence. Specifically, Robles argues that "[t]he trial court failed to ask [him] if he wished to address the court in mitigation of sentence." (Robles Brief, p. 3.)
 {¶ 10} Crim.R. 32(A)(1) provides in pertinent part:
 {¶ 11} "Sentence shall be imposed without unnecessary delay. * * * At the time of imposing sentence, the court shall do all of the following:
 {¶ 12} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
 {¶ 13} In State v. Campbell (2000), 90 Ohio St.3d 320,738 N.E.2d 1178, the Ohio Supreme Court examined a capital case where the trial court did not afford the defendant the right of allocution before sentencing. The court held:
 {¶ 14} "1. Pursuant to Crim.R. 32(A)(1), before imposing sentence, a trial court must address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.
 {¶ 15} "2. Crim.R. 32(A)(1) applies to capital cases and noncapital cases.
 {¶ 16} "3. In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." Id., at paragraphs one, two, and three of the syllabus. *Page 3 
 {¶ 17} The right of allocution also applies in misdemeanor cases.State v. Jones, 7th Dist. No. 02-BE-65, 2003-Ohio-3285, at ¶ 15.
 {¶ 18} In this case, when Robles finally returned for sentencing on July 21, 2006, the following colloquy took place:
 {¶ 19} "THE COURT: JUAN ROBLES.
 {¶ 20} "MR. MICHAEL L. GOLLINGS [Robles' trial counsel]: Your Honor, we're here for sentencing on that case pursuant to pleas of no contest to no operator's license and disorderly conduct. At the time the balance of the misdemeanors were dismissed.
 {¶ 21} "THE BAILIFF: Your Honor, the defendant also has three cases before the court today represented by Attorney Douglass.
 {¶ 22} "* * *
 {¶ 23} "THE COURT: ANYTHING YOU WOULD LIKE TO SAY?
 {¶ 24} "MR. GOLLINGS: Your Honor, I would just ask the court to consider, I've looked at the most recent BMV printout, and it appears that his traffic record prior to the date of this incident in November of `03 was fairly minimal at the time. I just ask the court to consider that.
 {¶ 25} "THE COURT: THERE WAS A RULE 11 AGREEMENT BACK ON FEBRUARY 4, 2004. THERE HAS BEEN THREE CAPIASES SINCE THEN. WE'RE FINALLY GETTING TO SENTENCING. ANYTHING FURTHER?
 {¶ 26} "MR. GOLLINGS: I don't believe so, Your Honor.
 {¶ 27} "THE COURT: 03-TRD-6884. ON THE NO OPERATOR'S LICENSE, 180 DAYS JAIL, NO FINE, BUT YOU'LL BE ASSESSED COSTS; ON THE DISORDERLY CONDUCT, 30 DAYS, NO FINE, BUT COSTS ASSESSED. UPON YOUR RELEASE FROM INCARCERATION, REPORT TO PROBATION AND DO COMMUNITY SERVICE FOR THE COSTS AND THREE CAPIAS FEES. DO YOU HAVE ANY QUESTIONS?
 {¶ 28} "DEFENDANT: No, sir.
 {¶ 29} "THE COURT: THANK YOU." (Tr. 5-6.) *Page 4 
 {¶ 30} At first blush it may appear from this portion of the transcript that the trial court did not afford Robles his right of allocution; although, the court generally said "anything you would like to say", whereas Robles attorney responded. However, a review of the entire transcript of the proceedings below tells the full story.
 {¶ 31} On February 2, 2004, after the trial court explained to Robles the effect of a no contest plea, the following colloquy took place:
 {¶ 32} "THE COURT: 03-TRD-6884. UPON YOUR PLEA OF NO CONTEST TO THE NO OPERATOR'S LICENSE, A MISDEMEANOR OF THE FIRST DEGREE AND DISORDERLY CONDUCT, A MISDEMEANOR OF THE FOURTH DEGREE, YOU ARE FOUND GUILTY. THE REMAINING CHARGES WILL BE DISMISSED.
 {¶ 33} "ANYTHING YOU WOULD LIKE TO SAY? NOW YOU CAN TALK.
 {¶ 34} "THE DEFENDANT: Well, I only have a thousand more to go. I've spent 4500 so far. I'm waiting for my reinstatement fee to come in and I'm finished.
 {¶ 35} "MR. GOLLINGS [Robles' trial counsel]: That's why we would like to come back so he can present a license and insurance to the court in mitigation.
 {¶ 36} "THE COURT: SENTENCING DATE?
 {¶ 37} "THE BAILIFF: April 23rd, 10:30.
 {¶ 38} "THE COURT: THANK YOU.
 {¶ 39} "MR. GOLLINGS: Thank you, Judge.
 {¶ 40} "THE DEFENDANT: Thank you." (Tr. 3-4.)
 {¶ 41} Here, the trial court clearly afforded Robles his right of allocution. Robles pleaded no contest and the trial court found him guilty. The only thing that remained to be conducted was sentencing. The trial court directly asked Robles if he had anything to say. Robles responded and seemed to indicate that he was waiting for some money in order to pay a reinstatement fee to get his license back. Robles' attorney also responded and ostensibly asked for a continuation of the hearing so that Robles could present a valid drivers license and proof of insurance in mitigation. Since the trial court gave counsel the opportunity to speak on behalf of Robles and addressed Robles personally, Robles was afforded his right of allocution.
 {¶ 42} The dissent maintains that Robles was not afforded his right of *Page 5 
allocution because he was not given the opportunity to speak "[a]t the time sentencing" (i.e, the July 21, 2006 hearing). Citing Crim.R. 32(A)(1). That conclusion is based on the premise that the February 4, 2004 hearing was strictly a change of plea hearing and the July 21, 2006 hearing was the sentencing hearing. In contrast, we view the later part of the February 4, 2004 hearing as the beginning of sentencing and the July 21, 2006 hearing as a continuation of and conclusion of sentencing.
 {¶ 43} The dissent also cites cases which it feels are analogous to this case. While acknowledging that they share some similarities with this case, they are nonetheless distinguishable. As the dissent indicates, in State v. Leeth, 4th Dist. No. 05CA745, 2006-Ohio-3575, the "Fourth District concluded that the statement the defendant madebefore the trial court found the defendant guilty was not sufficient to satisfy the defendant's right to allocate." (Emphasis added.) Here, however, Robles was given the opportunity to speak after being found guilty.
 {¶ 44} In State v. Sanders, 8th Dist. No. 81450, 2003-Ohio-1163, the defendant was initially given the opportunity to speak but the sentencing hearing was continued in order obtain his institutional record. When he was later sentenced he was not given the opportunity to address the new evidence (i.e., his institutional record) and the Eight District viewed this as a denial of his right of allocution. Here, when Robles was ultimately sentenced, there was no new evidence before the trial court. At the sentencing hearing, there was mention of Roble's "most recent BMV printout" of his traffic record and the three capais warrants issued for Robles subsequent to his plea. As for his traffic record, Roble's attorney merely indicated to the trial court that Robles had what he termed a "minimal" traffic record prior to the date of the instant offense. Therefore, this was not new evidence before the court. Concerning the three capiases, the trial court did make mention of them, but it was part of its recitation of the procedural history of the case. The court never stated that it was something it considered in its determination of Roble's sentence.
 {¶ 45} In Youngstown v. Czopur, 7th Dist. No. 99 CA 120, 2003-Ohio-4883, a visiting panel reversed the defendant's conviction because he was not given "the opportunity to speak after the judgment was rendered." Again, it is very clear here *Page 6 
that Robles was given the opportunity to address the courtafter the court found him guilty.
 {¶ 46} Lastly, although we conclude there was no error, even if we were to accept the dissent's notion that Robles should have been given another opportunity to speak at the July 21, 2006 sentencing hearing and that is was error for the trial court not to do so, Robles invited that error. As indicated earlier, the Ohio Supreme Court has held that, "[i]n a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless theerror is invited error or harmless error." (Emphasis added.) State v.Campbell (2000), 90 Ohio St.3d 320, 738 N.E.2d 1178, paragraph three of the syllabus. At the February 4, 2004 hearing where Robles entered the plea bargain, it is obvious that the trial court proceeded to sentence Robles; there was nothing else left to do after it accepted his no contest plea and found him guilty. After the trial court afforded Robles his right of allocution, the only reason it did not pronounce sentence and conclude the hearing was because Robles requested the opportunity to produce a valid drivers license and proof of insurance in mitigation. The trial court acquiesced, but the delay in or continuation of sentencing was nevertheless occasioned by Robles' request, not by the whim of the trial court. And Robles ultimately never did produce any new evidence in mitigation.
 {¶ 47} Accordingly, Robles' first assignment of error is without merit.
 {¶ 48} Robles' second assignment of error states:
 {¶ 49} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO THE MAXIMUM CONSECUTIVE SENTENCES CONTRARY TO OHIO'S MISDEMEANOR SENTENCING GUIDELINES[.]"
 {¶ 50} Effective January 1, 2004, 2002 H.B. 490 modified Ohio's misdemeanor sentencing scheme; specifically, R.C. 2929.21 and R.C.2929.22.
 {¶ 51} The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider *Page 7 
the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. Id.
 {¶ 52} A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B). The sentencing court has the discretion to determine the most appropriate method of achieving the aforestated purposes and principles of sentencing. R.C. 2929.22(A).
 {¶ 53} In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) whether the circumstances surrounding the offender and the offense indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense; (c) whether the circumstances regarding the offender and the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; (d) whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; (e) whether the offender is likely to commit future crimes in general. R.C.2929.22(B)(1). The court may also consider any other relevant factors. R.C. 2929.22(B)(2). And, before imposing a jail term as a sentence for a misdemeanor, the court shall consider the appropriateness of imposing a community control sanction. R.C. 2929.22(C).
 {¶ 54} Although the above advisory provisions give the sentencing court fairly broad discretion, the legislature added limitations on a court's ability to impose a maximum sentence for misdemeanants. R.C.2929.22(C) provides, in relevant part:
 {¶ 55} "A court may impose the longest jail term authorized under section *Page 8 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime."
 {¶ 56} In State v. Brooks, 7th Dist. No. 05 MA 31, 2006-Ohio-4610, this Court found this portion of R.C. 2929.22(C) unconstitutional in light of the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and severed the maximum sentence language and criteria.
 {¶ 57} Robles argues that the trial court "did not address or note any findings consistent with [R.C. 2929.22(B)] to justify a jail sentence" and did not consider the appropriateness of imposing a community control sanction before imposing a jail term (the remaining provision under R.C.2929.22[C] that was not declared unconstitutional in Brooks).
 {¶ 58} Robles' arguments under this assignment of error are premised entirely on sections of the Revised Code which are inapplicable to the offenses for which he was convicted. Robles' convictions stemmed from crimes that were committed on November 22, 2003, before the January 1, 2004 effective date of 2002 H.B. 490.
 {¶ 59} The Ohio Supreme Court addressed a similar issue in the felony sentencing context in State v. Rush (1998), 83 Ohio St.3d 53,697 N.E.2d 634. With the passage of Am. Sub. S.B. No. 2 (S.B. 2), criminal defendants were trying to get sentenced under what they perceived to be the more favorable terms of S.B. 2. Thus, the Court was faced with the issue of whether the amended sentencing provisions of S.B. 2 were applicable to those defendants who committed crimes prior to, but were convicted after, its July 1, 1996 effective date.
 {¶ 60} The General Assembly specifically stated that all defendants who committed crimes before July 1, 1996, shall be sentenced under the law in existence at the time of the offense, "notwithstanding division (B) of section 1.58 of the Revised Code." Section 3, Am. Sub. S.B. No.269, 146 Ohio Laws, Part IV, 11099, amending Section 5 of S.B. 2.
 {¶ 61} R.C. 1.58(B) states: *Page 9 
 {¶ 62} "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."
 {¶ 63} The defendants in Rush argued that R.C. 1.58(B) created a vested right to be sentenced according to the amended laws. The Court found that the "notwithstanding" language did not effect an amendment to R.C. 1.58(B) and instead was only a clarification of the General Assembly's intent to make S.B. 2 applicable only to those persons committing crimes on or after July 1, 1996. Moreover, the Court viewed the "notwithstanding" language as superfluous because the language of S.B. 2 clearly stated that it was applicable only to those persons committing crimes on or after July 1, 1996.
 {¶ 64} Here, H.B. 490 contains nearly identical language concerning the effective date as appeared in S.B. 2. Section 3 states:
 {¶ 65} "Notwithstanding division (B) of section 1.58 of the Revised Code, the provisions of the Revised Code in existence prior to January 1, 2004, shall apply to a person upon whom a court imposed prior to that date a term of imprisonment for a misdemeanor offense and to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, imposed a term of imprisonment for a misdemeanor offense that was committed prior to that date.
 {¶ 66} "The provisions of the Revised Code in existence on and after January 1, 2004, apply to a person who commits a misdemeanor offense on or after that date." 2002 Ohio Laws File 220 (H.B. 490).
 {¶ 67} Therefore, H.B. 490 is applicable only to those persons committing crimes on or after January 1, 2004. Since Robles committed his crimes prior to that, we will proceed to examine his sentence as we would have prior to H.B. 490.
 {¶ 68} In State v. Crable, 7th Dist. No. 04 BE 17, 2004-Ohio-6812, at ¶ 23-24, this Court set out misdemeanor sentencing review as follows:
 {¶ 69} "Sentencing is within the discretion of the trial court and ordinarily will not be disturbed absent an abuse of discretion.State v. Wagner (1992), 80 Ohio App.3d 88, 95, 608 N.E.2d 852, citingColumbus v. Jones (1987), *Page 10 39 Ohio App.3d 87, 529 N.E.2d 947. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Joseph (1996),109 Ohio App.3d 880, 882, 673 N.E.2d 241, citing State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. When reviewing a sentence, an appellate court should be guided by the presumption that the trial court's findings were correct. In the Matter Of: Michael L. Slusser (2000),140 Ohio App.3d 480, 487, 748 N.E.2d 105.
 {¶ 70} "According to [former] R.C. 2929.22, the trial court must consider the criteria listed in that statute before sentencing someone convicted of a misdemeanor. However, the trial court is not required to recite on the record its reasons for imposing the sentence. State v.Baker (1984), 25 Ohio Misc.2d 11, 13, 495 N.E.2d 976, citing State v.Bentley (May 6, 1981), 1st Dist. No. C-800378. Failure to consider the sentencing criteria is an abuse of discretion; but when the sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing otherwise. Wagner, 80 Ohio App.3d at 95-96, 608 N.E.2d 852. Failing to explain the statutory reasons behind a certain sentence is only fatal if there are mitigating factors without any aggravating factors given at the sentencing hearing. State v. Flors (1987), 38 Ohio App.3d 133, 140,528 N.E.2d 950. A silent record raises the presumption that the trial court considered all of the factors listed in R.C. 2929.12. State v.Fincher (1991), 76 Ohio App.3d 721, 727, 603 N.E.2d 329, citingState v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361."
 {¶ 71} In this case, the only mitigating information offered at sentencing was Robles' counsel's remark that prior to the November 22, 2003 offenses, Robles driving record was "fairly minimal." (Tr. 5.) After his no contest plea three years prior, Robles' counsel sought and obtained a delay in sentencing to give Robles the opportunity to present a valid driver's license and proof of insurance in mitigation. Instead, he failed to appear for sentencing numerous times and there is no indication in the record that Robles ever produced a valid driver's license or proof of insurance.
 {¶ 72} The only evidence that Robles offers in support of his contention that *Page 11 
the trial judge did not consider the appropriateness of community control sanctions is that there was no "presentence investigation, no review of the circumstances, no arguments by the prosecutor and no allocution by the Appellant." (Robles' Brief, p. 5.) Robles suggests that the trial court focused on the fact that the court had to issue capias warrants as a result of Robles' failure to appear. At the sentencing hearing, the trial court did mention the capias warrants, but more in reference to the current status of Robles' case. It did not specify any reasons as to why it sentenced Robles the way it did. Thus, although the trial judge made no specific findings showing that he considered the criteria listed in R.C. 2929.22, this silence is not fatal to the sentence since there is no proof that the judge abused his discretion. Flors, 38 Ohio App.3d at 140, 528 N.E.2d 950.
 {¶ 73} Accordingly, Robles' second assignment of error is without merit.
 {¶ 74} The judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., dissents. See attached dissenting opinion.