OPINION
{¶ 1} Defendant-appellant, Melissa Reynolds, appeals from a Jefferson County Common Pleas Court judgment convicting her of falsification following a jury trial and the resulting sentence.
 {¶ 2} On July 13, 2006, Camay Youngblood was stabbed to death in Steubenville, Ohio. Police arrested Janae Ray and charged her with Youngblood's murder. A jury trial was held in May 2007. Appellant was called as a defense witness for Ray. Appellant and Ray had been incarcerated together at the Jefferson County Jail for a brief period of time.
 {¶ 3} Appellant testified that she was on her way from her job at Wal-Mart to pick up her son from daycare and happened to be passing through the area where Ray and Youngblood were engaged in an altercation. Appellant testified that from her vantage point in her car, she heard Ray state that Ray did not want to fight because she was pregnant. This was the only evidence that Ray made such a statement. In fact, Ray's friends, who were with her at the murder scene and who also testified at her trial, made no mention of hearing Ray make such a statement. Ray ended up entering a guilty plea to an amended charge of murder and the matter was never submitted to the jury.
 {¶ 4} On July 11, 2007, a Jefferson County grand jury indicted appellant on one count of perjury, a third-degree felony in violation of R.C. 2921.11(A). The case proceeded to a jury trial. The jury found appellant not guilty of perjury, but guilty of the lesser-included offense of falsification, a first-degree misdemeanor in violation of R.C. 2921.13(A)(1). The trial court later sentenced appellant to six months in jail on the falsification conviction.
 {¶ 5} Appellant filed a timely notice of appeal on February 22, 2008. Subsequently, upon her motion, this court granted a stay of appellant's sentence pending appeal.
 {¶ 6} Appellant raises two assignments of error, the first of which states: *Page 2 
 {¶ 7} "THE IMPOSITION OF THE MAXIMUM PERIOD OF INCARCERATION AGAINST THE DEFENDANT IS CONTRARY TO O.R.C. § 2929.21 AND § 2929.22."
 {¶ 8} Appellant argues that the trial court failed to consider the purposes of misdemeanor sentencing when it sentenced her to the maximum jail term permitted. She argues that the harm caused by her crime was slight since Ray ultimately pleaded guilty and was convicted of murder. She further contends that she had no prior criminal history, asserting that her child endangerment charge had been dropped after she completed a parenting class. And appellant contends that her false statements did not constitute the worst form of the offense because the only statements that the state proved to be knowingly false were her statements as to why she was in the neighborhood of the murder.
 {¶ 9} We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. R .C. 2929.22;State v. Frazier,158 Ohio App.3d 407, 815 N.E.2d 1155, 2004-Ohio-4506, ¶ 15. Abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144. When reviewing a sentence, an appellate court is guided by the presumption that the trial court's findings were correct. In re Slusser (2000),140 Ohio App.3d 480, 487, 748 N.E.2d 105.
 {¶ 10} R.C. 2929.21(A) sets out the purposes of misdemeanor sentencing as follows:
 {¶ 11} "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Page 3 
 {¶ 12} In determining the appropriate sentence for a misdemeanor, the court shall consider:
 {¶ 13} "(a) The nature and circumstances of the offense or offenses;
 {¶ 14} "(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
 {¶ 15} "(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
 {¶ 16} "(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;
 {¶ 17} "(e) Whether the offender is likely to commit future crimes in general, * * *." R.C. 2929.22(B)(1).
 {¶ 18} Additionally, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing. R.C. 2929.22(B)(2).
 {¶ 19} Appellant was convicted of a first-degree misdemeanor. The maximum sentence for a first-degree misdemeanor is 180 days, or six months. R.C. 2929.24(A)(1).
 {¶ 20} In this case, the trial court found that appellant committed the offense when she lied under oath in an aggravated murder case in an attempt to create a false defense for the defendant, who was nonetheless convicted. It further found that this was the worst possible form of the offense of falsification. And it found that appellant has a prior conviction for child endangerment. The court then sentenced appellant to a maximum, six-month jail term. *Page 4 
 {¶ 21} The trial court considered the appropriate factors before sentencing appellant to the maximum jail term of six months. It considered the nature and circumstances of the offense and it considered appellant's criminal history. After doing so, it imposed a sentence that was within the statutory range. When the court's sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing to the contrary. State v. Crable, 7th Dist. No. 04-BE-17, 2004-Ohio-6812, at ¶ 24. Given these considerations, we conclude that the trial court did not abuse its discretion in sentencing appellant.
 {¶ 22} Accordingly, appellant's first assignment of error is without merit.
 {¶ 23} Appellant's second assignment of error states:
 {¶ 24} "THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} Here, without being specific, appellant argues that the jury's verdict was against the manifest weight of the evidence.
 {¶ 26} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount ofcredible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 27} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. *Page 5 
 {¶ 28} In this case, the jury convicted appellant of falsification in violation of R.C. 2921.13(A)(1), which provides:
 {¶ 29} "(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
 {¶ 30} "(1) The statement is made in any official proceeding."
 {¶ 31} We must consider the evidence offered at trial along with the elements of falsification to determine whether the jury's verdict was in fact supported by the weight of the evidence.
 {¶ 32} Appellant testified at Ray's trial that on the day of Youngblood's murder, she left work at Wal-Mart and travelled to downtown Steubenville to pick up her son from daycare. (State Ex. 3, p. 6-7). She further stated that she travelled this route every day. (State Ex 3, p. 6). Appellant stated that as she was stopped at a stop sign, she saw a confrontation between Ray and another woman who was seated in a car. (State Ex. 3, p. 8). She heard arguing. (State Ex. 3, p. 9). Appellant testified that she specifically heard Ray tell the other woman that she did not want to fight because she was pregnant. (State Ex. 3, p. 10). She stated that she was able to hear this because her sunroof was open. (State Ex. 3, p. 10). She stated that a fight then broke out and she continued on her way. (State Ex. 3, p. 12).
 {¶ 33} Appellant further testified at Ray's trial that she was later arrested and jailed on a child endangering charge. (State Ex. 3, p. 13). While in jail, appellant saw Ray and talked with her. (State Ex. 3, p. 14). She stated that later, Ray's private investigator contacted her. (State Ex. 3, p. 15).
 {¶ 34} Detective Regis Holzworth testified first in appellant's trial. Detective Holzworth testified that appellant told him that on the day in question, she left her employment at Wal-Mart in Steubenville and drove to the downtown area to pick up her son. (Tr. 101). On her way to pick up her son was when appellant supposedly witnessed the fight and heard Ray claim that she did not want to fight with Youngblood. The route appellant claimed to have taken, according to Detective *Page 6 
Holzworth, was "very illogical." (Tr. 101). When he attempted to verify appellant's story, Detective Holzworth learned that appellant had not worked at Wal-Mart that day as she had stated. (Tr. 101). Detective Holzworth further stated that had appellant travelled on Maryland Avenue as she had indicated to him, she would have been going the wrong way down a one-way street for three blocks. (Tr. 102, 104).
 {¶ 35} Detective Holzworth stated that he confronted appellant with the fact that she had not worked at Wal-Mart that day and therefore, she could not have been going from work to pick up her son. (Tr. 108). He stated that appellant then changed her story and told him that she had a drug problem and that she knew she did not work that day, but she did not want the court to know that the real reason she was in the area that day was to buy drugs. (Tr. 108). Detective Holzworth then testified that upon further questioning, appellant wavered in her story and finally stated that she did not hear Ray say that she did not want to fight. (Tr. 110, 114). Detective Holzworth stated that he then tape recorded an interview with appellant but did not ask her again whether she heard Ray make that statement. (Tr. 115-16).
 {¶ 36} Detective Holzworth additionally stated that at Ray's trial, appellant's testimony was the only evidence whatsoever that Ray made the statement in question. (Tr. 119). He stated that appellant's testimony about Ray's statement was contrary to all of the other evidence at trial. (Tr. 119-20).
 {¶ 37} Detective Jason Hanlin testified next. He worked on the Youngblood murder case and sat in on Ray's trial. He stated that he interviewed Ray and she never indicated to him that she was pregnant. (Tr. 129, 134). Detective Hanlin further stated that he was present for the interviews of three of Ray's friends who were with her at the murder scene. (Tr. 130). He stated that none of these girls mentioned anything about Ray being pregnant nor did they mention that Ray wanted to avoid a fight because of a pregnancy. (Tr. 130-32). In other words, none of Ray's friends who were with her at the murder scene heard the statement by Ray that appellant claimed to have heard. (Tr. 130-32). *Page 7 
 {¶ 38} Detective Hanlin further testified that appellant's story did not make sense to him. (Tr. 136). He, like Detective Holzworth, stated that if appellant's version of how she arrived at the stop sign where she allegedly heard Ray's statement was true, she would have had to have travelled two-and-a-half to three blocks in the wrong direction on a one-way street. (Tr. 136). He further stated that with all of the cars and people in the area at the time, appellant would have had to see through the cars in order to witness the altercation. (Tr. 137-38). And he opined that it was hard to believe that appellant could hear anything Ray said from the distance of one block away, which is where she claimed to have been. (Tr. 137-38).
 {¶ 39} Joseph Rice, Ray's private investigator, testified next. He stated that when he spoke to appellant, she told him that while she did not witness the murder, she heard Ray state that she was pregnant and could not fight. (Tr. 184).
 {¶ 40} Appellant also testified in her own defense. She stated that she was in the area of the Youngblood murder on the day in question to buy drugs, not because she was coming from work. (Tr. 206). She stated that while she knew now that she did not work that day, when she testified in Ray's trial she believed she had been coming from work. (Tr. 207). Appellant then once again testified that she heard Ray tell Youngblood that she did not want to fight because she was pregnant. (Tr. 208, 216). She stated that she spoke with Ray while they were in jail together. (Tr. 211, 213). However, she stated that their conversations were brief. (Tr. 211). She stated that neither Ray nor her attorney ever asked her to testify in a certain way or to pay her for her testimony. (Tr. 212).
 {¶ 41} Appellant further admitted to telling some lies during the Ray trial. She stated that she did not take the same route every day, as she had testified to. (Tr. 216, 227-28). And she admitted that she was not at work that day, although she still claimed that she originally believed that she was. (Tr. 217-18).
 {¶ 42} Finally, Detective Mark Taylor testified. He stated that prior to the Ray trial he attempted to locate appellant but was unsuccessful. (Tr. 255). He further stated that on the day of Ray's trial, appellant would not speak with him. (Tr. 256). *Page 8 
 {¶ 43} Based on the above testimony, we conclude that the jury's verdict was supported by the manifest weight of the evidence. The evidence was clear that at Ray's trial appellant testified she was at work on the day in question and she drove the same route that she drives everyday in order to pick up her son. Furthermore, appellant clearly testified at Ray's trial that she witnessed the altercation between Ray and Youngblood from her car and that she heard Ray state that she did not want to fight because she was pregnant. Detective Holzworth testified that appellant later admitted that hearing this statement by Ray was a lie. Furthermore, appellant admitted that she was not at work on the day in question, but was instead buying drugs. And she admitted that she did not travel the same route every day as she had testified to. Additionally, both Detectives Holzworth and Hanlin testified that appellant's account of how she got to the location from where she allegedly witnessed the altercation did not make sense.
 {¶ 44} Appellant did testify once again that she heard Ray make the statement in question. However, it was up to the jury to determine whether to believe her testimony or that of the detectives. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finders' determination of witnesses' credibility. State v.Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.
 {¶ 45} Consequently, the greater amount of credible evidence supports the jury's verdict. Appellant's second assignment of error is without merit.
 {¶ 46} For the reasons stated above, the trial court's judgment is hereby *Page 9 
affirmed.
Waite, J., concurs.
DeGenaro, J., concurs. *Page 1