[Cite as *State v. Ford*, 2025-Ohio-2476.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ALEXIS B. FORD,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0109**

---

Criminal Appeal from the
Youngstown Municipal Court of Mahoning County, Ohio
Case No. 24CRB00423Y

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kathleen Thompson,* City Prosecutor, City of Youngstown Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Donald K. Pond*, for Defendant-Appellant.

Dated: July 11, 2025

_____

**DICKEY, J.**

{¶1} Appellant, Alexis B. Ford, appeals her sentence for one count of violating a a protective order in violation of R.C. 2919.27(A)(2), a misdemeanor of the first degree, following her entry of a guilty plea in the Youngstown Municipal Court. R.C. 2919.27(A) reads in part, "[n]o person shall recklessly violate the terms of any of the following: . . . (2) A protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code." The trial court imposed the maximum jail sentence of 180 days, with 120 days suspended, and a credit of two days for time served, one year of probation with a $150 probation fee, a fine in the amount of $50 plus court costs, a mental health assessment, and anger management classes.

{¶2} In Appellant's sole assignment of error, she argues the trial court abused its discretion in imposing a jail sentence because she has no criminal history and warranted to the trial court that she would not contact the victim in the future. The trial court stayed the sentence pending the outcome of this appeal.

{¶3} For the following reasons, Appellant's sentence is affirmed.

## LAW

{¶4} "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). These purposes are achieved by considering "the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.* The sentence "shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing . . . commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

{¶5} A court imposing a misdemeanor sentence "has discretion to determine the most effective way to achieve the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code." R.C. 2929.22(A) (without creating an unnecessary burden on local government resources). In imposing a misdemeanor sentence, the court

must consider all of the following factors: (a) the nature and circumstances of the offense; (b) any circumstances surrounding the offender and the offense indicating a history of persistent criminal activity and substantial risk of recidivism; (c) any circumstances indicating the offender's history, character, and condition show a substantial risk of danger to others and conduct characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to consequences; (d) any victim characteristics influencing vulnerability or impacting the seriousness of the offense; (e) the general likelihood of recidivism; (f) any conditions traceable to military service contributing to the offense; and (g) any military service record. R.C. 2929.22(B)(1). The court may also consider other factors relevant to sentencing. R.C. 2929.22(B)(2). Prior to imposing a jail term, the sentencing court must first consider the appropriateness of imposing a community control sanction. R.C. 2929.22(C).

{¶6} A misdemeanor sentence is reviewed for an abuse of discretion. *State v. Nuby*, 2016-Ohio-8157, ¶ 10 (7th Dist.), citing *State v. Reynolds*, 2009-Ohio-935, ¶ 9 (7th Dist.). *See also* R.C. 2929.22(A) (providing the sentencing court with discretion to determine the most effective way to achieve the purposes and principles of sentencing). An abuse of discretion is more than an error of judgment; it requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶7} The trial court has full discretion to impose any sentence within the authorized statutory range. *State v. Brooks*, 2006-Ohio-4610, ¶ 32 (7th Dist.). A trial court must consider the criteria of R.C. 2929.22 and the principles of R.C. 2929.21 before imposing a misdemeanor sentence. *State v. Crable*, 2004-Ohio-6812, ¶ 24 (7th Dist.). Nevertheless, a court sentencing for a misdemeanor is not required to state on the record its consideration of the sentencing factors. *State v. Wallace*, 2013-Ohio-2871, ¶ 16, 18 (7th Dist.); *Crable* at ¶ 24.

{¶8} When a misdemeanor sentence is within the statutory range, a reviewing court must presume the trial judge made the required considerations absent an affirmative showing to the contrary. *State v. Best*, 2009-Ohio-6806, ¶ 14 (7th Dist.); *Crable* at ¶ 24. In other words, a silent record creates a rebuttable presumption that the sentencing court

considered the statutory misdemeanor sentencing criteria. *Wallace* at ¶ 16; *Best* at ¶ 14; *Crable* at ¶ 24-25.

{¶9} Appellant bears the burden of proof with respect to the trial court's alleged failure to consider the statutory factors. *State v. Burley*, 2017-Ohio-378, ¶ 16 (7th Dist.). "[I]n some cases the defendant may be able to utilize the court's statements at sentencing to rebut the presumption that the court considered the sentencing factors." *Nuby* at ¶ 16. The argument that the court disregarded the sentencing factors can be overruled if "[t]here is nothing in the transcript of the sentencing hearing or the sentencing entry that affirmatively shows that the trial court did not consider the appropriate factors in R.C. 2929.22." *Burley* at ¶ 17.

## FACTS AND PROCEDURAL HISTORY

{¶10} A criminal complaint filed on April 25, 2024 alleged Appellant violated a protective order on or about April 23, 2024 "through multiple phone calls." On the day the matter was scheduled to proceed to trial, Appellant entered a guilty plea. The state recommended the maximum sentence, 180 days, with 178 days suspended, two days credit for time served, one year of probation, a $50 fine, and no contact with the victim.

{¶11} At the plea hearing on November 6, 2024, defense counsel characterized the events giving rise to the criminal complaint as "an unfortunate incident between two young ladies," explaining "their emotions got the better of them." (11/6/24 Plea Hrg. Tr., p. 5.) Defense counsel emphasized nothing physical had occurred between Appellant and the victim, they simply engaged in a war of words. Further, Appellant understood that even if the victim instigates communication, Appellant is prohibited from responding. At the plea hearing, Appellant had been subject to house arrest with electronic monitoring for 91 days without incident.

{¶12} The victim took umbrage to defense counsel's characterization of both the events giving rise to the criminal complaint and Appellant's willingness to voluntarily comply with the protection order in the future. The victim recounted two years of harassment by Appellant, which both parties concede was the result of Appellant's involvement with the father of the victim's child. The victim alleged Appellant had physically assaulted the victim and Appellant had damaged property belonging to the

victim's father.  The victim opined, "for [Appellant] to just get one year probation is kind of crazy."  (*Id.* at p. 8.)

**{¶13}**  The state explained the foregoing conduct described by the victim was the subject of police reports that gave rise to the issuance of the protection order on February 9, 2024.  The state explained the events leading to the criminal complaint as follows:

> [Appellant] was riding up and down [the victim's] street yelling at her, and then – this happened on two different dates, August 16th, as well as August 24th. On the August 24th date, the officers were present.  [Appellant] kept calling [the victim's] phone.  The officers actually spoke to [Appellant], you know, and she's saying – you know, she's coming to do this and coming to do that, and she also sent a text message after saying I don't care about the cops, I'm going to get you one way or another.

(*Id.* at p. 10.)

**{¶14}**  The victim expected Appellant's behavior to continue after sentencing, as the victim believed the only thing curtailing Appellant's criminal conduct was the electronic monitor.  The victim explained she lives alone with her now three-year-old daughter, and she filed for the protection order out of concern for her daughter's safety.  The victim stated Appellant had posted pictures of the victim's daughter "hanging" and Appellant superimposed the child's image on "male parts."  (*Id.* at p. 11.)

**{¶15}**  Appellant, who also has a child, claimed she and the victim "both do stuff to each other back and forth, back and forth, bickering on social media, stuff like that.  But once [the victim] put the protection order on [Appellant], [the victim] began to harass [Appellant.]"  (*Id.* at p. 12.) Appellant alleged the victim "called child services on [Appellant]."  (*Id.*) Appellant further alleged the victim "made four different social media accounts exposing [Appellant's] Social Security number, [her] name, [her] address, [her] phone number, and where [she] stays, all of that."  (*Id.* at p. 13.) Appellant accused the victim's mother and the father of the victim's child of breaking windows in her home. Subsequently, the victim taunted Appellant about "sleep[ing] in the cold" on a fake social media page.  (*Id.*)

Case No. 24 MA 0109

{¶16} Appellant stated she was "outraged," and as a consequence, she "did not care about the protection order." Appellant conceded she "aggressed towards [the victim]" because at that point Appellant cared only about her own safety. Appellant asserted neither she nor the victim was a "saint[ ] in this situation." (*Id.* at p. 13-14.)

{¶17} Nonetheless, Appellant warranted she would "stay away from [the victim] because the fact that it got this far is just not worth [Appellant's] time." (*Id.*) Appellant told the trial court, "I wanted to resolve our situations how girls will resolve a situation and just leave it at that." (*Id.*)

{¶18} The trial court acknowledged the sentencing recommendation of the state, which was accepted by Appellant. However, the trial court cautioned Appellant that the trial court was not bound by the joint recommendation, and could impose maximum jail time and a maximum fine.

{¶19} Rather than proceeding to sentencing, the trial court ordered a pre-sentence investigation report ("PSI"). A sentencing hearing was scheduled for December 17, 2024.

{¶20} According to the PSI, Appellant, then age twenty, regularly consumed alcohol and smoked marijuana. She did not complete high school after giving birth to a child at age 15. Appellant worked at several fast food restaurants and as a home healthcare provider for roughly eight months. The PSI recommended the maximum sentence of 180 days, with 150 days suspended, one year of probation, a drug and alcohol assessment, anger management training, and no contact with the victim.

{¶21} According to the victim impact statement attached to the PSI, Appellant threatened to "kick [the victim's] baby out of her stomach" while the victim was pregnant, and Appellant put rat poison in the victim's yard in order to kill her dogs. Appellant also put a dead dog on the victim's porch and frequently deposited trash and half-eaten food in the victim's yard. Appellant and members of her family cut the victim's window screens and broke her screen door. They also regularly drove up and down the victim's street screaming threats and obscenities. The victim stated Appellant had already violated the protection order and was likely to continue as she has demonstrated a clear disregard for the law and law enforcement officers.

{¶22} Appellant's statement to the trial court attached to the PSI reads in its entirety:

Case No. 24 MA 0109

i [sic] feel like this whole thing is pointless on my end[.] as a grown wom[a]n it shouldn't have gotten this far with the victim[.] after this case is closed i will not see or speak with the victim[.] i expect her to do the same[.] it isn't fair that this girl can bother me and paint a picture like i'm just harassing her when its back and forth on both ends[.] i have great things going for me and all of this is doing nothing but slowing me down[.] i have a kid that i'm worried about more than a woman who is mad over a man[.] my main priority is my child and her main priority is harassing different females over this same guy[.]  I would like for them both to leave me alone so i can live my life like i was before them.

{¶23}  According to a police report dated April 16, 2024, which was attached to the PSI, the victim alleged Appellant and her mother drove down the victim's street and Appellant yelled that she was going to "[get] more individuals and return to the residence to fight [the victim.]"  The victim called family members, including her brother, who was in the process of installing a video camera on the victim's porch when Appellant returned with her sister.

{¶24}  Because the victim was no longer alone, Appellant shouted she would be back to "shoot up the residence." Appellant's second threat was captured by the video camera and displayed for the investigating officers. It is important to note the criminal complaint is predicated upon Appellant's conduct on or about April 23, 2024, which relates to the second of the two incidents in April of 2024.

{¶25}  At the sentencing hearing, the trial court observed that "some of the things that transpired in [the PSI] really have me very concerned. . . . Stalking this woman and her family with a gun is serious in my book."  (12/17/2024 Sentencing Hrg. Tr., p. 6-7.) The trial court continued, "[t]hat alone, that alone is cause for concern, let alone everything else that you did to this woman.  And you want to just say, its over; it's okay; I'm done with it now." (*Id.* at p. 7.)

{¶26}  Appellant denied owning a gun and placing a dead animal on the victim's porch. Appellant also denied putting rat poison in the victim's yard, but Appellant conceded to depositing refuse in the yard.  With respect to the foregoing accusations, Appellant said, "rat poison and stuff like that, no.  And also I don't own a gun or know

anybody that does own a gun. So if it's possible to like look deeper into that, I would want you to." The trial court responded, "[w]ell, I'm sorry, ma'am. At this point this is – this is my sentence." (*Id.* at p. 7-8.)

**{¶27}** The trial court imposed the maximum jail sentence of 180 days, with 120 days suspended, two days of jail credit for time served, one year of probation with a $150 probation fee, a fine in the amount of $50 plus court costs, a mental health assessment, and anger management classes. The trial court declined defense counsel's request to credit any portion of Appellant's house arrest to her sentence.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY IMPOSING A JAIL SENTENCE UPON APPELLANT, CONTRARY TO THE STATUTORY PROVISIONS FOR MISDEMEANOR SENTENCING.**

**{¶28}** Appellant contends the trial court abused its discretion in imposing a jail sentence based on "bare, unproved allegations contained in the victim's impact statement and assertions to the court during the plea hearing." (Appellant's Brf., p. 9.) Appellant asserts probation, with mental health and anger management treatment, was an appropriate sanction due to her lack of criminal history and her averments during the plea and sentencing hearings that she would not violate the protection order in the future.

**{¶29}** However, " '[c]ourts have consistently held that evidence of other crimes, including crimes that never result in criminal charges being pursued, or criminal charges that are dismissed as a result of a plea bargain, may be considered at sentencing.' " *State v. Dixon*, 2022-Ohio-280, ¶ 31 (4th Dist.), quoting *State v. Starkey*, 2007-Ohio-6702, ¶ 16 (7th Dist.), citing *State v. Cooey*, 46 Ohio St.3d 20, 35 (1989). *See also State v. Banks*, 2011-Ohio-2749, ¶ 24 (10th Dist.), citing *State v. Wiles*, 59 Ohio St.3d 71, 78 (1991), *State v. Bowser*, 2010-Ohio-951, ¶ 16 (2d Dist.). Indeed, " '[c]ourts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation ("PSI").' " *State v. Steele*, 2017-Ohio-7605, ¶ 10 (8th Dist.), quoting *State v. Ropp*, 2014-Ohio-2462, ¶ 4 (3d Dist.). The Eighth

District has opined "uncharged conduct cannot be 'the sole basis for the sentence.' " *Steele* at ¶ 10, quoting *State v. Gray*, 2009-Ohio-4200, ¶ 13 (8th Dist.), citing *State v. Williams*, 2002 WL 192335 (8th Dist. Feb. 7, 2002).

**{¶30}** Several of the factors to be considered when imposing a misdemeanor sentence support the trial court's imposition of the maximum sentence. First, the nature and circumstances of the offense support the conclusion that a jail sentence was warranted. Although Appellant claimed the misconduct was mutual, Appellant admitted the escalating enmity she displayed toward the victim, which culminated in the victim's petition for a protective order. Undaunted by the issuance of the protective order, Appellant continued her harassment of the victim.

**{¶31}** While it is true Appellant controlled her behavior while she was subject to electronic monitoring, there was no indication she would not contact the victim after the monitoring system is discontinued. Appellant conceded she disregarded the protection order because she was "outraged" and in fear for her life after the victim's family allegedly broke her windows. Rather than reporting the crime to law enforcement or filing for a protection order, Appellant chose instead to violate the protection order.

**{¶32}** Next, the circumstances surrounding the offender and the offense indicate a history of persistent criminal activity and substantial risk of recidivism. The crime for which Appellant was convicted is the last criminal act in a campaign of harassment, including but not limited to assault and vandalism, which culminated in threats against the victim made directly to law enforcement.

**{¶33}** Third, the record is replete with circumstances indicating Appellant's history, character, and condition, which establish both a substantial risk of danger to the victim, and conduct characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to consequences. As previously stated, Appellant expressed no remorse and repeatedly placed the blame for the events leading to the criminal complaint on the victim. However, Appellant failed to avail herself of legal mechanisms to end the victim's alleged criminal behavior. Instead, Appellant drove down the victim's street shouting threats on two days in April of 2024. On the first day, Appellant's threats were captured on videotape, and on the second day, she communicated her intent to hurt the victim directly to law enforcement.

**{¶34}** Appellant contends her lack of criminal history and her assertion at the plea and sentencing hearings that she would not contact the victim foreclosed the imposition of a jail sentence. However, Appellant alleged the victim was equally responsible for the animosity between them, Appellant blamed the victim for inciting the incident that led to the criminal complaint, and Appellant defended her own criminal behavior. The trial court was not obliged to accept Appellant's representation that she would not contact the victim.

**{¶35}** Finally, many of the accusations of uncharged conduct placed the victim's child in jeopardy. For instance, the victim stated she feared her child could have accidently ingested the rat poison Appellant left for the victim's dogs.

**{¶36}** Due to the length of time Appellant harassed the victim, the escalation of Appellant's conduct, the dangerous means she employed, and her concession that she disregarded the terms of the protection order due to alleged property damage that she never reported to law enforcement, we find that the trial court did not abuse its discretion in imposing the maximum jail sentence of 180 days, with 120 days suspended. Accordingly, we find Appellant's sole assignment of error has no merit and Appellant's sentence is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 24 MA 0109

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**